UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JOHN T. MURDOCK,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 7:20-CV-00508-RDP |
| | } |
| **OMEGA FINANCIAL, LLC,** | } |
| a Delaware limited liability company, | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff John Murdock filed this lawsuit on April 15, 2020, advancing one cause of action against Defendant Omega Financial, LLC: breach of contract. (Doc. # 1). On June 5, 2020, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 13). Defendant's Motion has been fully briefed (Docs. # 14, 18, 19) and is under submission. After careful consideration, the court concludes that Defendant's Motion (Doc. # 13) is due to be denied.

**I.  Background**

On January 28, 2018, Plaintiff John Murdock ("Plaintiff") sold his company, Greek Resource Services, Inc. ("GRS, Inc.") -- which provided accounting, billing, payment, and collection services to fraternal service organizations -- to Defendant Omega Financial, LLC ("Defendant"). (Doc. # 1 at 3, ¶¶ 8-10). Defendant has continued to operate the former business, at the same location in Tuscaloosa, Alabama, as a limited liability company with a similar name, Greek Resource Services, LLC ("GRS, LLC"). (*Id.* ¶ 10). Under the parties' Stock Purchase

Agreement ("Agreement") (Doc. # 1-1),[1] Defendant paid most of the purchase price to Plaintiff upon closing, and the parties agreed to a "Deferred Payment" of $100,000 payable on February 7, 2020, pursuant to § 2.2.1(ii)(b) of the Agreement. (*Id.* ¶ 11). The parties also agreed to an "Indemnity Holdback Amount" of $458,000, to be payable on or before April 14, 2020, under §§ 7.10.1 and 7.10.2 of the Agreement. (*Id.*).

In January 2020, Defendant gave notice to Plaintiff ("Indemnity Notice") that it was entitled to indemnity under Section 7 of the Agreement for potential tax liabilities arising from the failure of GRS, Inc. to file state tax returns and remit taxes in other jurisdictions outside of Alabama, in which GRS, Inc. had clients. (*Id.* ¶ 12). Plaintiff responded to the Indemnity Notice on February 6, 2020, notifying Defendants that: (1) it had no legitimate basis for claiming any indemnity; (2) any indemnity claims, even if legitimate, would not be the proper subject of the Indemnity Holdback Amount; and (3) Defendant's failure to pay over either the Deferred Payment or the Indemnity Holdback Amount would constitute a breach of Defendant's obligations to Plaintiff under the Agreement, which itself would trigger Defendant's obligation to indemnify Plaintiff under § 7.2.2 of the Agreement. (*Id.* ¶ 14). In his response, Plaintiff asked Defendant for certain information, including Defendant's calculations and methodology regarding the Indemnity Notice. (*Id.*). On February 7, 2020, Defendant transferred to Plaintiff $100,000 for the Deferred Payment under § 2.2.1(ii)(b) of the Agreement. (*Id.* ¶ 15). On March 31, 2020, Plaintiff requested that Defendant release the $458,000 Indemnity Holdback Amount, in accordance with § 7.10.1 of the Agreement. (*Id.* ¶ 16). On April 2, 2020, Defendant refused to pay. (*Id.* ¶ 17).

On April 15, 2020, Plaintiff filed his initial Complaint, alleging that Defendant's failure to

---

[1] The Stock Purchase Agreement was filed as an attachment to Plaintiff's Complaint. Thus, the court may properly consider the Agreement for purposes of ruling on Defendant's Motion to Dismiss. *See* Fed. R. Civ. P. 10(c); *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

pay the Indemnity Holdback Amount constituted a breach of contract. (*Id.* ¶¶ 18-22). Plaintiff contends this breach triggered Defendant's duty to indemnify for all losses, including the Indemnity Holdback Amount, attorneys' fees and costs, and interest under § 7.2.2 of the Agreement. (*Id.*). On June 5, 2020, Defendant filed its Motion to Dismiss, asserting it was contractually entitled to withhold the Indemnity Holdback Amount under the Agreement. (Doc. # 14 at 9).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III. Discussion

In its Motion to Dismiss, Defendant asserts that Plaintiff has failed to plead a breach of contract because it is contractually entitled to withhold the Indemnity Holdback Amount. Plaintiff, however, contends that the Complaint clearly alleges each element of a breach of contract claim under Delaware law.[2] A breach of contract under Delaware law consists of the following elements: "(1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *H-M Wexford, LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003). The court's inquiry is relatively straightforward: whether Plaintiff can survive Defendant's Rule 12(b)(6) motion to dismiss by

---

[2] In cases brought on the basis of diversity jurisdiction, such as this one, "a federal district court . . . must apply the choice of law rules of the forum state" in determining which law applies. *Clanton v. Inter.Net Global, L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) (citation omitted). Here, Alabama is the forum state, and in contract disputes, "Alabama courts 'first look to the contract to determine whether the parties have specified a particular sovereign's law to govern.'" *Id.* (quoting *Stovall v. Universal Const. Co., Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004)) (citation omitted). It is undisputed that the Agreement at issue contains a choice-of-law clause mandating that Delaware law will govern any dispute between the parties. (Doc. # 1-1 at 40, § 9.6). Thus, the court applies the substantive law of Delaware.

alleging, "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to support" a breach of contract under Delaware law.  *See Penaloza v. Drummond Co., Inc.*, 384 F. Supp. 3d 1328, 1340-41 (N.D. Ala. 2019) (citation omitted).  After careful review, the court concludes that Plaintiff has plausibly alleged a breach of contract; therefore, Defendant's Motion (Doc. # 13) is due to be denied.

### A.     Plaintiff Has Plausibly Alleged a Contractual Obligation

Plaintiff asserts that the parties' Stock Purchase Agreement constitutes a contractual obligation.  Under Delaware law, a legally binding contract exists where there is an offer, acceptance, consideration for both the offer and acceptance, and clear terms delineating the obligations of each party.  *See Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101-02 (De. Ch. 1986).  In this case, Plaintiff offered to sell his company (GRS, Inc.) to Defendant and Defendant accepted that offer, as evidenced by the existence of the Stock Purchase Agreement.  Defendant's consideration to Plaintiff was the purchase price, minus the Deferred Payments and Indemnity Holdback Amount, wired to Plaintiff's bank account before execution of the Agreement.  Plaintiff gave consideration by turning over all of GRS, Inc.'s issued and outstanding capital stock to Defendant, as well as by agreeing to receive part of the purchase price at a later date through the Deferred Payments.  Finally, according to the court's own expertise, the terms of Agreement specifically outline the parties' obligations to each other.

Therefore, the court concludes that Plaintiff has plausibly alleged the existence of a contractual obligation between himself and Defendant.

### B.     Plaintiff Has Plausibly Alleged that Defendant Breached Its Contractual Obligations

Plaintiff contends that Defendant was in breach of contract by failing to pay him the Indemnity Holdback Amount on or before April 14, 2020, in accordance with §§ 7.10.1 and 7.10.2

of the Agreement.  Defendant admits that it has not paid Plaintiff the Indemnity Holdback Amount; however, this admission does not necessarily indicate a breach of the Agreement.  Defendant notified Plaintiff that it would not pay him the Indemnity Holdback Amount because Plaintiff failed to file state tax returns and remit taxes outside of Alabama and was therefore responsible for potential tax liabilities amounting to $473,299.47, a sum greater than the Holdback Amount.  Importantly, whether Defendant is entitled to indemnification for the Holdback Amount cannot be determined at this stage of the litigation.  *See Pike Creek Chiropractic Center, P.A. v. Robinson*, 637 A.2d 418, 421 (Del. 1994) (footnote omitted) ("A court construing an indemnification agreement should look to the actual facts developed through discovery, or at trial, to determine if the indemnitee is free from actual wrongdoing and therefore entitled to complete indemnification."). At a minimum, discovery and motion practice are required on that question.

Consequently, the court concludes that Plaintiff has plausibly alleged a breach of contract claim against Defendant because it failed to pay him the Indemnity Holdback Amount by or on the date specified in the Agreement.

### C. Plaintiff Has Plausibly Alleged He Suffered Damages Stemming from Defendant's Breach

Finally, Plaintiff alleges that he suffered damages arising from Defendant's breach of contract: a total loss of the Indemnity Holdback Amount contained within the Agreement, a sum of $458,000.  Plaintiff has suffered real damages by not receiving the Indemnity Holdback Amount on or before April 14, 2020 -- to which he may be entitled either in part or in full -- if Defendant has improperly invoked his duty to indemnify under the Agreement.  As such, because Plaintiff has allegedly suffered this loss, the court concludes that Plaintiff has plausibly alleged he suffered damages from Defendant's breach of contract.

**IV.    Conclusion**

For all the foregoing reasons, the court concludes that Plaintiff has sufficiently plead facts that could give rise to a breach of contract under Delaware law. Therefore, Defendant's Motion to Dismiss (Doc. # 13) is due to be denied.³ An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 6, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

³ The court acknowledges that Plaintiff raised additional substantive arguments in his Opposition brief. Specifically, Plaintiff argues that (1) there was no "disputed or pending" claim to which Defendant could withhold the Indemnity Holdback Amount, and (2) even if there was a "disputed or pending" claim, rather than Defendant withholding the Indemnity Holdback Amount, Plaintiff was entitled to control any liabilities arising from this "pre-closing tax period." (Doc. # 18 at 7-8, 13), However, the court need not address these arguments at this time to rule on the motion. Rather, they are better analyzed after a full factual record has been developed through discovery.